RYAN L. DENNETT, ESQ.
Nevada Bar No. 005617
MATTHEW A. SARNOSKI, ESQ.
Nevada Bar No. 009176
**DENNETT WINSPEAR, LLP**
3301 N. Buffalo Drive, Suite 195
Las Vegas, Nevada 89129
Telephone:   (702) 839-1100
Facsimile:   (702) 839-1113
**ATTORNEYS FOR PLAINTIFFS**

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| PROVIDENT TRUST COMPANY, a Nevada Corporation; JASON HELQUIST, an individual; THERESA FETTE, an individual; ANDREW TERRELL, an individual; ANDREW DUNCAN, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>LIFE CARE FUNDING GROUP, LLC, a Maine Corporation; DONALD POOLE, an individual; CHRIS ORESTIS, an individual; ROE CORPORATIONS I-XX, inclusive; DOE INDIVIDUALS I-XX, inclusive,<br><br>Defendants. | Case No: 2:12-cv-00552-KJD-PAL<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY JUDGMENT** |

Plaintiffs above-named, by and through counsel, DENNETT WINSPEAR, LLP, for its First Amended Complaint for Damages and for Declaratory Judgment against Defendants, allege as follows:

### I.

### **PARTIES**

1. Plaintiff PROVIDENT TRUST (hereinafter "PROVIDENT") is a Nevada Corporation with its principal place of business in Las Vegas, Nevada.

2. Plaintiff JASON HELQUIST is a resident of Clark County, Nevada.

3. Plaintiff THERESA FETTE is a resident of Clark County, Nevada.

4. Plaintiff ANDREW TERRELL is a resident of Connecticut.

5. Plaintiff ANDREW DUNCAN is a resident of Connecticut.

6. Upon information and belief, Defendant LIFE CARE FUNDING GROUP, LLC (hereinafter "LIFE CARE" is a Maine Corporation, with its principal place of business in Maine.

7. Upon information and believe, Defendant DONALD POOLE is a resident of New York.

8. Upon information and belief, Defendant CHRIS ORESTIS is a resident of Maine.

9. Those Defendants named as DOES and ROES represent persons or entities involved in the events of this case whose identities cannot be determined at this time, notwithstanding reasonable diligence on the part of Plaintiff(s) to determine their identities. Plaintiffs will move this Court to amend these pleadings to fully identify such ROE and DOE Defendants as their identities become known.

10. Upon information and belief, each of the Defendants to this action were and are agents, representatives, and alter-egos of every other Defendant, engaged in a common enterprise for mutual gain benefit, with the knowledge, approval, endorsement, and proxy of each other Defendant.

## II.

## JURISDICTION

11. There is complete diversity of citizenship between all Plaintiffs and all Defendants in this action.

12. The amount in controversy in this action exceeds $75,000.

13. This Court has diversity jurisdiction over the present action pursuant to 28 U.S.C. 1332, and jurisdiction to render Declaratory Judgment pursuant to 28 U.S.C. 2201.

## III.

## GENERAL ALLEGATIONS

14. Plaintiffs and Defendants in this case are business entities engaged in financial and other industries.

15. In approximately December of 2011, Plaintiffs and Defendant LIFE CARE (through its agents and representatives POOLE, ORESTES, and CUZZUPOLI) began discussions and negotiations for a joint business enterprise involving acquisition of life insurance policy benefits in

exchange for end-of-life and other health care funding. Plaintiffs believe and assert that such business represents a "growth market" for a variety of financial and public policy reasons.

16. Part and parcel to business negotiations, PROVIDENT and LIFE CARE executed various written and other contracts, including a Mutual Non-Disclosure Agreement.

17. The terms of the Mutual Non-Disclosure Agreement between PROVIDENT and LIFE CARE included provisions defining information as confidential and proprietary to the signatories of the agreement, including but not limited to trade secrets, technology and information, and the identities of investors, customers, and other business relations.

18. The terms of the Mutual Non-Disclosure Agreement included provisions that LIFE CARE FUNDING GROUP was to not disclose or make use of information provided to it by PROVIDENT, including restrictions on contacting the customers, investors, and other business relations of PROVIDENT.

19. Part and parcel to business negotiations, PROVIDENT provided to LIFE CARE information deemed "confidential" under the terms of the Mutual Non-Disclosure Agreement, including but not limited to proprietary business models, and the identities of PROVIDENT's investors and business relations.

20. Part and parcel to business negotiations, Plaintiffs provided to LIFE CARE information deemed "confidential" under the terms of the Mutual Non-Disclosure Agreement, including but not limited intellectual property regarding pricing model templates.

21. Business negotiations between Plaintiffs and LIFE CARE broke down in approximately March of 2012, without the successful execution of any agreement for ongoing or future business relations.

22. Since the cessation of business negotiations between Plaintiffs and LIFE CARE, LIFE CARE has mis-appropriated confidential information provided to LIFE CARE by Plaintiffs, including LIFE CARE initiating direct contact with Plaintiffs' customers, investors and business relations.

23. Since the cessation of business negotiations between Plaintiffs and LIFE CARE, LIFE CARE has mis-appropriated confidential information provided to LIFE CARE by Plaintiffs, including but not limited to business and pricing model templates.

24. Since the cessation of business negotiations between Plaintiffs and LIFE CARE, LIFE CARE has threatened litigation regarding claims for proprietary information which LIFE CARE asserts to have provided to Plaintiffs, which claims Plaintiffs assert are ripe for adjudication.

IV.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**
**(By PROVIDENT against ALL DEFENDANTS)**

25. By this reference, Plaintiffs set forth all of the foregoing paragraphs of this Complaint, as though set forth herein in full.

26. By contacting the business relations of Plaintiffs following cessation of business negotiations between the parties, Defendants, and each of them, are in violation of the express terms of the Mutual Non-Disclosure agreement, the terms of which are binding on Defendants.

27. By retaining the business and pricing model templates and other information provided by Plaintiffs to Defendants over the course of negotiations, Defendants, and each of them, are in violation of the express terms of the Mutual Non-Disclosure agreement, the terms of which are binding on Defendants.

28. As a result of Defendants' breach of the terms of the Mutual Non-Disclosure Agreement, Defendants have been damaged in amount to be proven at trial, but in excess of $10,000.

V.

**SECOND CLAIM FOR RELIEF**
**(Intentional Interference with Contractual Relationship)**
**(By PROVIDENT against ALL DEFENDANTS)**

29. By this reference, Plaintiffs set forth all of the foregoing paragraphs of this Complaint, as though set forth herein in full.

30. PROVIDENT had prior contractual and other relationships with the customers, investors, and other business relations which were contacted by Defendants.

4

31. Defendants had knowledge of, or could have inferred from the surrounding facts, the existence of PROVIDENT's contractual and other relationships with PROVIDENT's customers, investors, and other business relations.

32. Defendants, by directly contacting PROVIDENT's customers, investors, and/or other business relations, intended to and did interfere with and disrupt the contractual relations between PROVIDENT and such customers, investors, and/or other business relations.

33. Defendants acted willfully and maliciously while engaging in the wrongdoing described herein, with the intention of causing injury to Plaintiffs or in conscious disregard of a substantial risk of significant harm to Plaintiffs.

34. As a direct and proximate result of Defendants' intention interference with the contractual relations of Plaintiffs, Plaintiffs have been damages in an amount to be proved at trial, but in excess of $10,000.

35. Defendants conduct as described herein entitled Plaintiffs to an award of punitive damages under the law of Nevada.

## VI.

### THIRD CLAIM FOR RELIEF
(Intentional Interference with Prospective Business Advantage)
(By PROVIDENT against ALL DEFENDANTS)

36. By this reference, Plaintiffs set forth all of the foregoing paragraphs of this Complaint, as though set forth herein in full.

37. PROVIDENT had prospective contractual and other relationships with customers, investors, and other business relations which were contacted by Defendants.

38. Defendants had knowledge of Plaintiffs' prospective relationships with the customers, investors, and other business relations.

39. Defendants, by directly contacting PROVIDENT's customers, investors, and/or other business relations, intended to and did interfere with and disrupt the prospective relations between PROVIDENT and such customers, investors, and/or other business relations.

40. Defendants acted willfully and maliciously while engaging in the wrongdoing described herein, with the intention of causing injury to Plaintiffs or in conscious disregard of a substantial risk of significant harm to Plaintiffs.

41. As a direct and proximate result of Defendants' intention interference with the prospective business relations of Plaintiffs, Plaintiffs have been damages in an amount to be proved at trial, but in excess of $10,000.

42. Defendants conduct as described herein entitled Plaintiffs to an award of punitive damages under the law of Nevada.

## VII.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)
### (By ALL PLAINTIFFS against ALL DEFENDANTS)

43. By this reference, Plaintiffs set forth all of the foregoing paragraphs of this Complaint, as though set forth herein in full.

44. LIFE CARE has misappropriated confidential information provided to LIFE CARE by Plaintiffs, including LIFE CARE's misappropriation and use confidential information regarding Plaintiffs' customers, investors and business relations.

45. LIFE CARE has misappropriated confidential information provided to LIFE CARE by Plaintiffs, including but not limited to business and pricing model templates.

46. The information misappropriated by LIFE CARE represents a valuable trade secret or secrets that derives independent economic value by not being generally known or readily ascertainable by proper means by the public or by Plaintiffs' competitors.

47. The information misappropriated by LIFE CARE represents valuable intellectual property, which is owned by and proprietary to Plaintiffs.

48. The information misappropriated by LIFE CARE includes valuable financial models over which Plaintiffs have always retained and maintained ownership and intellectual property rights.

49. The value of the materials and information misappropriated by LIFE CARE from Plaintiffs exceeds $75,000.

50. During all times relevant to this action, Plaintiffs used reasonable efforts to maintain possession and secrecy of the identity of and relationships with Plaintiffs' customers, investors, and business relations which were misappropriated by Defendants.

51. During all times relevant to this action, Plaintiffs used reasonable efforts to maintain possession and secrecy of the business and pricing models which were misappropriated by Defendants.

52. In committing the acts described herein, Defendants acted willfully, wantonly, recklessly, and/or in conscious disregard of the rights of Plaintiffs.

53. As a direct and proximate result of Defendants misappropriation of Plaintiff's trade secrets and proprietary information as described herein, Plaintiffs have been damages in amount to be proved at trial, but in excess of $10,000.

54. Defendants conduct as described herein entitles Plaintiffs to an award of punitive damages under the law of Nevada.

## VIII.

### FIFTH CLAIM FOR RELIEF
(Declaratory Judgment)
(By ALL PLAINTIFFS against ALL DEFENDANTS)

55. By this reference, Plaintiffs set forth all of the foregoing paragraphs of this Complaint, as though set forth herein in full.

56. Over the course of negotiations, LIFE CARE provided to Plaintiff various items of information and business models.

57. The business models, information, and other materials provided by LIFE CARE to Plaintiffs are, in whole or in part, available as part of the public domain, either by direct communication by LIFE CARE to the general public, or else through regulation, statute, or other material(s).

58. The business models, information, and other materials provided by LIFE CARE to Plaintiffs are not proprietary or secret, and as a matter of law cannot represent proprietary materials private to Defendants.

59. There is no "special relationship" between Plaintiffs and Defendants which would give rise to equitable obligations on Plaintiffs' behalf.

60. No fiduciary obligation existed at any time or currently exists which requires Plaintiffs to observe unusual or extraordinary duties of care toward Defendants.

61. No Plaintiff was ever or is currently acting in the role of an "agent" toward any Defendant as a "principal."

62. No Plaintiff was ever given, nor currently has, the ability to bind any Defendant to any obligation.

63. No Plaintiff ever represented itself, himself or herself as an agent for any Defendant or as having the ability to bind any Defendant to any contract or obligation.

64. Plaintiffs request a ruling from the Court defining the scope of protection, if any, enjoyed by LIFE CARE for any materials or information provided by LIFE CARE to Plaintiffs.

## IX.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seeks judgment against Defendants, declaring:

1. For money damages in excess of $10,000;

2. For exemplary and punitive damages, as called for by Nevada and other law;

3. For pre- and post-judgment interest at the maximum allowable rate;

4. For Plaintiffs' reasonable attorneys' fees and costs incurred herein;

5. For ruling from the Court that Plaintiffs owe no duty or obligation to Defendants for materials provided by Defendants to Plaintiffs in the course of business negotiations;

6. For declaratory judgment that no fiduciary obligation existed or currently exists between any Plaintiff and any Defendant;

7. For declaratory judgment that no agency principal relationship existed or currently exists between any Plaintiff and any Defendant, and

/ / /

/ / /

/ / /

8. For such other and further relief as the court deems proper.

DATED this 23 day of July, 2012.

DENNETT WINSPEAR, LLP

By_____
RYAN L. DENNETT, ESQ.
Nevada Bar No. 005617
MATTHEW A. SARNOSKI, ESQ.
Nevada Bar No. 009176
3301 N. Buffalo Drive, Suite 195
Las Vegas, Nevada 89129
Telephone:   (702) 839-1100
Facsimile:    (702) 839-1113
**ATTORNEYS FOR PLAINTIFFS**

9